# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00922-CV

---

**Juan Enriquez, Appellant**

**v.**

**David Gutierrez, Presiding Chair, Texas Board of Pardons and Paroles, and TBPP Members James LaFavers, Federico Rangel, Cynthia Tauss, Ed Robertson, Fred Solis, and Sherman Skyme, Appellees**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-002610, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant Juan Enriquez appeals from the district court's order granting the plea to the jurisdiction filed by appellees David Gutierrez, Presiding Chair, Texas Board of Pardons and Paroles (TBPP), and TBPP Members James LaFavers, Federico Rangel, Cynthia Tauss, Ed Robertson, Fred Solis, and Sherman Skyme (collectively, appellees). In four points of error on appeal, Enriquez asserts that the district court erred in granting the plea to the jurisdiction. We will affirm the district court's order.

### BACKGROUND

In 1966, the State alleged that Enriquez "shot to death his girlfriend, her father, her brother, a woman he abducted, and a Texas Highway Patrolman." *Enriquez v. Procunier*,

752 F.2d 111, 113 (5th Cir. 1984). A jury convicted Enriquez of murdering the woman he abducted and imposed the death penalty for that offense.[1] *Id.*; *see Enriquez v. State*, 429 S.W.2d 141, 145 (Tex. Crim. App. 1968) (affirming Enriquez's murder conviction). In 1972, the Texas Governor commuted Enriquez's death sentence to life imprisonment after the United States Supreme Court declared the death penalty unconstitutional under all then-existing capital-sentencing schemes. *See Furman v. Georgia*, 408 U.S. 238, 239 (1972); *see also Ex parte Enriquez*, 490 S.W.2d 546, 547 (Tex. Crim. App. 1973) (discussing applicability of *Furman* decision to Enriquez's case); *Enriquez v. Crain*, No. 03-12-00065-CV, 2014 WL 236859, at *1 (Tex. App.—Austin Jan. 16, 2014, pet. denied) (mem. op.) (summarizing procedural history of case). Since that time, Enriquez has filed numerous civil suits and habeas corpus applications in federal and state courts, challenging the legality of his sentence and continued imprisonment beyond the date that Enriquez believes himself entitled to release on parole or mandatory supervision.[2] *See* Tex. Gov't Code § 508.147(a) (providing that "[e]xcept as provided by

---

[1] In separate proceedings arising out of the other deaths, Enriquez pleaded guilty to murder and assault with intent to commit murder, receiving three concurrent 99-year sentences for the murder pleas and one 25-year sentence for the assault plea. *See Enriquez v. State*, Nos. 13-02-480-CR, 13-02-481-CR, 13-02-482-CR, 13-02-483-CR, 2003 WL 22736517, at *1 (Tex. App.—Corpus Christi-Edinburg, Nov. 20, 2003, pet. ref'd) (not designated for publication).

[2] *See, e.g.*, *Enriquez v. Stringfellow*, 81 F. App'x 487, 487 (5th Cir. 2003) (affirming dismissal of Enriquez's federal suit challenging procedures used by Texas Board of Pardons and Paroles to determine Enriquez's parole eligibility); *Enriquez v. Procunier*, 752 F.2d 111, 113 (5th Cir. 1984) (denying Enriquez's federal habeas application and noting that "Enriquez has filed nine state habeas applications, all of which were denied by the Texas Court of Criminal Appeals in orders dating from October 7, 1968 to November 7, 1979"); *Ex parte Enriquez*, No. 04-17-00356-CR, 2018 WL 3747677, at *1 (Tex. App.—San Antonio Aug. 8, 2018, pet. ref'd) (mem. op., not designated for publication) (affirming denial of Enriquez's state habeas application pursuant to Articles 11.01 and 11.08 of Texas Code of Criminal Procedure); *Enriquez v. Crain*, No. 03-12-00065-CV, 2014 WL 236859, at *1 (Tex. App.—Austin Jan. 16, 2014, pet. denied) (mem. op.) (affirming dismissal of Enriquez's suit against state officials as frivolous); *Enriquez v. State*, No. 04–10–00071–CR, 2011 WL 2637370, at *3 (Tex. App.—San Antonio July 6, 2011, pet. ref'd) (mem. op., not designated for publication) (concluding that

Section 508.149, a parole panel shall order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced"); *but see id*. § 508.149(a) (providing that "[a]n inmate may not be released to mandatory supervision if the inmate is serving a sentence for or has been previously convicted of" certain offenses including capital murder and first-degree murder).

 In this proceeding, Enriquez filed suit against appellees for various causes of action related to his continued imprisonment. In his first cause of action, Enriquez asserted that his continued imprisonment without proper parole review violates his federal civil rights. *See* 42 U.S.C. § 1983. In his second cause of action, Enriquez claimed that he is being "falsely imprisoned" beyond the date that he was entitled to release. In his third cause of action, Enriquez argued that appellees have violated the Texas Constitution by reviewing improperly his parole eligibility, refusing him release on mandatory supervision, and ignoring case law that he believes entitles him to release. In his fourth cause of action, Enriquez sought mandamus relief against appellees, asking that the district court order them to comply with the law regarding the requirements for parole review and mandatory supervision. In his fifth cause of action, Enriquez claimed that appellees were "negligent per se" by "failing or refusing to correct their records" related to the judgment of Enriquez's conviction. In his sixth cause of action, Enriquez accused appellees of publishing defamatory information on their website showing that Enriquez was

Enriquez was not entitled to judgment nunc pro tunc following commutation of death sentence); *Enriquez v. Owens*, No. 03-09-00309-CV, 2010 WL 2698764, at \*1 (Tex. App.—Austin July 9, 2010, pet. denied) (mem. op.) (affirming grant of summary judgment against Enriquez in his suit complaining that Board of Pardons and Paroles used improper procedures when reviewing him for parole).

convicted of first-degree murder and that he is imprisoned on a "commuted life sentence" even though, in Enriquez's view, "no valid commutation order exists."

Appellees removed the case to federal court because Enriquez alleged a federal cause of action. *See* 28 U.S.C. § 1446(b). In federal court, Enriquez requested permission to dismiss his federal cause of action and remand the remaining causes of action to state court. The federal district court granted Enriquez's request. Upon returning to state district court, appellees filed a plea to the jurisdiction relating to Enriquez's remaining causes of action. In the plea, appellees argued that Enriquez's tort claims are barred by the doctrines of absolute immunity, sovereign immunity, and official immunity. Regarding Enriquez's claims under the Texas Constitution, appellees argued that "there is no recognized private cause of action for violation of civil rights under the Texas Constitution." At the hearing on the plea to the jurisdiction, appellees further argued that Enriquez lacks standing to bring any of his claims and that the district court does not have mandamus jurisdiction over appellees. Following the hearing, the district court granted the plea to the jurisdiction and dismissed all of Enriquez's remaining causes of action. This appeal followed.

**STANDARD OF REVIEW**

"A plea to the jurisdiction challenges the court's authority to decide a case." *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). "The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction." *Id.* (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). "Immunity from suit implicates a court's subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction." *Nettles v. GTECH*

4

*Corp.*, 606 S.W.3d 726, 731 (Tex. 2020) (citing *Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016)). "Because subject-matter jurisdiction is a question of law, we review de novo a trial court's ruling on a plea to the jurisdiction." *Id.* (citing *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 120 (Tex. 2015)).

"When a plea to the jurisdiction challenges the pleadings," as it does here, "we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. "We construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent." *Heckman*, 369 at 150. Courts "must grant the plea to the jurisdiction if the plaintiff's pleadings affirmatively negate the existence of jurisdiction." *Id.*

## DISCUSSION

Enriquez asserts that the district court erred in granting the plea to the jurisdiction. In his first point of error, Enriquez argues that he has standing to pursue his claims. In his second point of error, Enriquez contends that "immunity does not shield a governmental entity for equitable relief for a violation of rights under the Texas Constitution." In his third point of error, Enriquez asserts that Article 11.07 of the Code of Criminal Procedure does not apply in this case because he "is not challenging a final felony conviction" but is instead challenging "the use of non-existent crimes and non-existent convictions in parole and mandatory supervision eligibility decisions." In his fourth point of error, Enriquez asserts that the district court has jurisdiction with respect to his negligence per se and slander claims because appellees were acting "ultra vires."

5

**Article 11.07**

Regarding Enriquez's cause of action seeking mandamus relief against appellees, the district court made the following conclusion:

> The appropriate avenue for the appellant to pursue the relief sought by his claim for mandamus relief is to file an application for writ of habeas corpus under Code of Criminal Procedure Article 11.07. Because Code of Criminal Procedure Article 11.07 provides the exclusive avenue for challenging custody under a final felony conviction, this court does not have jurisdiction over Plaintiff's request for mandamus relief, injunctive relief, or declaratory relief of the nature sought by Plaintiff in this case. As such, the Motion is GRANTED and IT IS FURTHER ORDERED Plaintiff's requests for mandamus, injunctive, and declaratory relief are DISMISSED.

We agree with the district court that because of Article 11.07, the district court does not have jurisdiction to grant Enriquez mandamus, injunctive, or declaratory relief in this case.[3] We also conclude that Article 11.07 applies to all of Enriquez's remaining causes of action.

A common thread running through all of Enriquez's claims is his allegation that his continued imprisonment for his 1966 murder conviction is unlawful. As alleged in his petition, Enriquez's legal theory is as follows:

> "Under Texas law, all prisoners under sentence of death when *Furman* was decided were entitled to retrial or release," because "an appellate court may not reduce the sentence assessed by the jury."

> "However, when the death penalty was obtained in a bifurcated trial, the governor

---

[3] Although Enriquez also sought in his petition monetary relief in the form of actual, exemplary, and nominal damages, this relief appears to be limited to his cause of action for violations of 42 U.S.C. § 1983, which was dismissed in federal court. Enriquez makes this clear in his reply brief, in which he writes that in this case, "neither § 1983 nor damages are involved." Thus, Enriquez's claims for mandamus, injunctive, and declaratory relief are all that remain in this proceeding.

6

was authorized to cure penalty error by commuting the invalid death sentence because a valid verdict of ordinary murder existed to serve as a basis for commutation."

"[T]he Attorney General of Texas interpreted *Furman* as it applied to Texas law and to prisoners then under sentence of death," opining that "absent commutation the court concerned must either grant a new trial (or in habeas corpus, order the release of the prisoner if a new trial is not granted)."

"[T]he [Texas] governor issued [a proclamation] wherein he purported to commute [Enriquez]'s death penalty verdict . . . to a life sentence; however, the commutation order had no effect because the death penalty was part of the guilt determinative process."

"*Furman* . . . erased the one-stage trial forced on [Enriquez] when the State announced it would seek the death penalty and the conviction obtained under the constitutionally infirm death penalty statutes of that time."

"Defendants' predecessors as defendants today knew that the commutation was a nullity but . . . misled the courts reviewing [Enriquez]'s detention that [Enriquez] was held . . . on a first-degree murder conviction."

"Prison officials admitted that 'the Director does not have a copy of the judgment and sentence documenting Enriquez's [first-degree murder] conviction.'"

"Instead, prison officials detained [Enriquez] on a policy implemented to detain on null commutation orders prisoners for whom they did not have a judgment of conviction."

Enriquez goes on to allege that a similar situation occurred with another prisoner who had his death sentence commuted and that the Court of Criminal Appeals concluded in that case that "the governor's proclamation of commutation was a nullity." *Hartfield v. Thaler*, 403 S.W.3d 234, 240 (Tex. Crim. App. 2013). For these reasons, Enriquez believes that his "death-penalty judgment is legally non-existent under *Furman* and Texas law" and that the commutation order sentencing him to life imprisonment is invalid.

7

This legal theory is central to all of Enriquez's causes of action. In his cause of action for false imprisonment, Enriquez is asserting that he is entitled to release on mandatory supervision because, even though prisoners serving life sentences are not entitled to release on mandatory supervision,[4] Enriquez's life sentence is "non-existent." In his cause of action for violations of the Texas Constitution, Enriquez is asserting that appellees are refusing him proper parole review, refusing to release him on mandatory supervision, and refusing to follow the decision of the Court of Criminal Appeals in *Hartfield*, supra. In his cause of action for mandamus relief, Enriquez wants the district court to order appellees to comply with the *Hartfield* decision and statutes that Enriquez believes entitle him to release. In his cause of action for negligence per se, Enriquez is complaining that appellees failed to correct their records to contain his "official judgment" of conviction rather than the commutation order that he claims is "illegal under the *Furman* and *Hartfield* holdings." And in his cause for action for defamation, Enriquez accuses appellees of slander and libel based on their publishing of information related to his conviction and sentence, specifically that he is imprisoned on a commuted life sentence for first-degree murder even though, according to Enriquez, "no valid commutation order exists."

Enriquez asserts that in this proceeding, he is not seeking release from confinement. However, it is clear from the allegations in his petition, summarized above, that his causes of action in effect challenge the legality of his confinement. It is well established that the remedy for unlawful confinement is to file an application for writ of habeas corpus. *See Blackledge v. Allison*, 431 U.S. 63, 71 (1977); *Ex parte Adams*, 768 S.W.2d 281, 287 (Tex. Crim. App. 1989) (orig. proceeding); *Ex parte Ramzy*, 424 S.W.2d 220, 223 (Tex. 1968). It is

---

[4] *See Ex parte Franks*, 71 S.W.3d 327, 328 (Tex. 2001) ("[I]t is mathematically impossible to determine a mandatory supervision release date on a life sentence because the calendar time served plus any accrued good conduct time will never add up to life.").

8

also well established that the Court of Criminal Appeals is "the only court with jurisdiction in final post-conviction felony proceedings," *Ater v. Eighth Court of Appeals*, 802 S.W.2d 241, 243 (Tex. Crim. App. 1991); *see also Sheppard v. Wichita Cnty. Dist. Att'y's Off.*, 616 S.W.3d 655, 658 (Tex. App.—El Paso 2021, no pet. h.); *Calton v. Schiller*, 498 S.W.3d 247, 252 (Tex. App.—Texarkana 2016, pet. denied); *Smith v. Lynaugh*, 792 S.W.2d 110, 111–12 (Tex. App.—Houston [1st Dist.] 1990, no writ), and the procedure set out in Code of Criminal Procedure Article 11.07 is "the exclusive State felony post-conviction judicial remedy available in Texas," *Adams*, 768 S.W.2d at 287; *see* Tex. Code Crim. Proc. art. 11.07, § 5 ("After conviction the procedure outlined in [Article 11.07] shall be exclusive and any other proceeding shall be void and of no force and effect in discharging the prisoner.").

It is the role of the convicting court to make any preliminary fact findings related to Enriquez's confinement and the role of the Court of Criminal Appeals to determine such issues as the legality of the commutation order, *see Hartfield*, 403 S.W.3d at 240, the applicability of the court's decision in *Hartfield* to the facts of Enriquez's case, the legality of the procedures used by appellees to review Enriquez's eligibility for parole, *see Ex parte Geiken*, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000), and Enriquez's entitlement to release on mandatory supervision, *see Ex parte Noyola*, 215 S.W.3d 862, 865 (Tex. Crim. App. 2007). Under Article 11.07, the 53rd District Court of Travis County, which played no role in convicting Enriquez, plays no role in reviewing the legality of Enriquez's continued confinement following that conviction. Thus, the district court did not err in granting the plea to the jurisdiction. *See, e.g.*, *Ater*, 802 S.W.2d at 243 ("We are the only court with jurisdiction in final post-conviction felony proceedings.") *Sheppard*, 616 S.W.3d at 658 ("A collateral attack on the procedures or results of a prior criminal trial are not proper matters to be litigated in a civil proceeding."); *Calton*, 498

S.W.3d at 252 (concluding that trial court did not have jurisdiction to grant injunctive relief to inmate who was serving term of life imprisonment because "exclusive post-conviction remedy in final felony convictions in Texas is through a writ of habeas corpus pursuant to" Article 11.07); *Martinez v. Thaler*, 931 S.W.2d 45, 46 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ("A district court has no constitutional or statutory jurisdiction to exercise supervisory control over prison officials."); *see also Ex parte Touchstone*, No. 07-12-00239-CR, 2012 WL 2368546, at *1 (Tex. App.—Amarillo June 22, 2012, orig. proceeding) (order, not designated for publication) (dismissing for want of jurisdiction inmate's request for declaration that his underlying conviction was "null and void" "because the exclusive means of challenging a final felony conviction is in the Texas Court of Criminal Appeals according to article 11.07 of the Texas Code of Criminal Procedure"); *cf. Board of Pardons & Paroles v. Court of Appeals for the Eighth Dist.*, 910 S.W.2d 481, 483 (Tex. Crim. App. 1995) (per curiam) (concluding that district court did not have authority to grant relief from allegedly improper revocation of parole because Court of Criminal Appeals "enjoys the exclusive authority to grant relief in such a proceeding").

Enriquez asserts that Article 11.07 does not apply in this case because he "is not challenging a final felony conviction" but is instead challenging "the use of non-existent crimes and non-existent convictions in parole and mandatory supervision eligibility decisions." However, Enriquez acknowledged in his petition that he was convicted of the crime of murder, a felony offense, and that the Court of Criminal Appeals affirmed his conviction, making it final. *See Enriquez*, 429 S.W.2d at 145. Thus, the procedures in Article 11.07 apply here, and Article 11.07 requires that Enriquez seek relief in the Court of Criminal Appeals. *See Ex parte Williams*, 239 S.W.3d 859, 861–62 (Tex. App.—Austin 2007, no pet.).

10

We overrule Enriquez's third point of error challenging the applicability of Article 11.07. Because we conclude that the procedures in Article 11.07 provide the exclusive means for Enriquez to obtain relief from his allegedly illegal confinement, we need not consider Enriquez's remaining points of error challenging the district court's grant of the plea to the jurisdiction on other grounds.

## CONCLUSION

We affirm the district court's order granting the plea to the jurisdiction.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed: April 30, 2021

11